IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
97 FEB -7 AM 8:33
U.S. ........ COURT
N.D. OF ALABAMA

AMSOUTH BANK OF ALABAMA, )
)
     Plaintiff, )
)
vs. ) CIVIL ACTION NUMBER
)
ASSOCIATES COMMERCIAL ) 97-C-0177-S
CORPORATION, )
)
     Defendant. )

ENTERED
FEB 7 1997

## MEMORANDUM OF OPINION ON MOTION
## FOR PRELIMINARY INJUNCTION

Plaintiff has moved the Court for a Preliminary Injunction. Because it has failed to meet all of the requirements for preliminary injunctive relief, its motion is due to be denied.

I

Russell Coal Incorporated ("Russell") is a coal mining corporation. On June 15, 1995, defendant Associates Commercial Corporation ("Associates") financed the purchase of a Komatsu Model WA700 loader ("Komatsu loader") by Russell from Tractor and Equipment Company. The amount financed was $608,497.50. Russell is obligated to pay the unpaid time balance in 36 monthly installments of $19,493 each.

The Security Agreement contains the following provisions, among others:

8

>SECURITY INTEREST. To secure payment of the UNPAID TIME BALANCE, and all of Seller's obligations with respect to the purchase price of the equipment. Seller retains title to and a security interest in the Equipment and all cash and non-cash proceeds thereof....
>
>CROSS SECURITY. Buyer grants to Seller a security interest in the Collateral to secure payment of all absolute and all contingent obligations and liabilities of Buyer to Seller, or to any assignee of Seller, now existing or hereafter arising, whether under this agreement or any other agreement and whether due directly, indirectly or by assignment....

In January 1996, Associates financed Russell's purchase of a second loader. Associates never actually used the Komatsu loader as collateral for the second loader. Russell has now extinguished its indebtedness to Associates for the financing of the second loader.

Russell has no indebtedness to Associates presently, aside from the indebtedness for the Komatsu loader.

Russell is also indebted to AmSouth, to the tune of over $600,000. This indebtedness is secured by various security documents. Under these documents, AmSouth enjoys a first priority, properly-perfected blanket security interest in all of Russell's equipment.

Russell is now in Chapter 11 bankruptcy. Associates obtained from the Bankruptcy Court, with the consent of Russell, a relief from the automatic stay. Associates then proceeded to sell

2

the Komatsu loader at public auction. As the only bidder at the auction, Associates bid in $340,000. It now has title to and possession of the loader.

AmSouth sought unsuccessfully to temporarily enjoin the sale of the Komatsu loader. However, the court temporarily restrained Associates from commingling the sales proceeds with its general funds pending a hearing on the motion for a preliminary injunction.

II

To prevail on its Motion For A Preliminary Injunction, AmSouth must establish: (1) irreparable injury in the absence of an injunction, (2) a likelihood of success on the merits of its claim, (3) a tilting of the equities in its favor, and (4) that the public interest will not be disserved by the issuance of a preliminary injunction.

III

A

There is simply no evidence before the court indicating that AmSouth will suffer irreparable injury if preliminary injunctive relief is not granted. The loader is in the possession of Associates, and its counsel has assured the court that prior to

any sale of the loader, AmSouth will be given notice. Even without such assurance, there is no basis for an inference that Associates will be unable to satisfy a money judgment rendered against it in this action, should AmSouth prevail. AmSouth has no emotional or sentimental attachment to the loader. Its damages are purely monetary.

B

Whether AmSouth has shown a likelihood of success on the merits turns in large part on the application *vel non* of the "transformation rule" enunciated by *SouthTrust v. Borg-Warner Acceptance Corp.*, 760 F.2d 1240 (11th Cir. 1985). In the ordinary course of commerce, Associates' purchase money security interest ("PMSI") would trump AmSouth's blanket security interest in the loader. Ala. Code § 11-9-312(3); § 7-9-107 (1981). But under *SouthTrust's* transformation rule, the inclusion of the cross-security clause may have transformed Associates' PMSI into an ordinary security interest - subordinate to AmSouth's first priority interest in the loader.

It is clear that if Associates had actually exercised the cross-security clause, its PMSI would have been destroyed. *SouthTrust*, at 1243. But it is equally clear that Associates *did not* utilize the clause. In *SouthTrust*, the circuit did not address the issue: "We need not reach the issue of whether mere inclusion

4

of unexercised future advances and after-acquired property clauses voids a PMSI..." *Id.*

Where a lender such as Associates contractually provides some method of determining the extent to which each item of collateral secures its purchase money, its PMSI in each such item is preserved. Here, AmSouth concedes that the Associates-Russell Security Agreement provides a precise method for determining the extent of Associates' PMSI in the loader. The Agreement allocates each of the $19,493 monthly installment payments to a particular piece of equipment - the loader.

Under these circumstances, AmSouth has not carried its burden of showing a likelihood of success on the merits of its transformation claim.

Since AmSouth has failed to meet the requirements[1] for a preliminary injunction, its motion shall be denied by separate Order.

DONE this ___6TH___ day of February, 1997.

UNITED STATES DISTRICT JUDGE
U. W. CLEMON

---

[1] The equities tilt against AmSouth. Associates has paid for the loader. Equitably, it should be entitled to its possession ahead of other creditors of Russell.

5